## Guyer v. Zimmerman

334

C.P. of Cumberland County, no. 1431 Civil 1993.

*Fred H. Hait,* for plaintiffs.
*John B. Fowler III,* for defendants.

BAYLEY, *J.,* May 2, 1995—Plaintiffs aver in their complaint that in 1979 they purchased a lot from defendants in South Newton Township. The lot is in a recorded residential subdivision developed by defendants. In 1990, a house was constructed on plaintiffs' lot. Plaintiffs aver that after moving into their house they discovered their lot, "is subject to periodic severe flooding because the lot gathers storm water runoff from the rest of the subdivision." Plaintiffs aver that they "have been unable to use large portions of their property due to standing water that collects there during periods of heavy rain or substantial snow melt," and that condition "substantially diminishes the value of

their property." Plaintiffs seek damages against defendants upon the following averments:

"Under the terms of the Storm Water Management Act, Act of October 4, 1978, P.L. 864, 32 P.S. §680.1 et seq., defendants, as persons engaged in the development of land, were under a duty to implement such measures in developing their subdivision as were reasonably necessary to prevent storm water injury to health, safety, or property. . . .

"By offering the subdivided tracts for sale as residential building lots, defendants impliedly warranted that the lots were habitable, and fit for their intended purpose as home sites."

Defendants filed preliminary objections to the complaint in the form of demurrers to each theory of recovery. The Storm Water Management Act at 32 P.S. §680.13 provides:

"Duty of persons engaged in the development of land

*"Any landowner and any person engaged in the alteration or development of land* which may affect storm water runoff characteristics *shall implement such measures consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary to prevent injury to* health, safety or other *property.* Such measures shall include such actions as are required:

"(1) to assure that the maximum rate of storm water runoff is no greater after development than prior to development activities; or

"(2) to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury." (emphasis added)

A "watershed storm water plan" is defined in section 680.4 of the Act as "[a] plan for storm water management adopted by a county in accordance with [the Act]." Plaintiffs have not pleaded, pursuant to section 13 of the Act, that Cumberland County has a watershed storm water plan that would be applicable to this case, much less pleaded the manner in which defendants are alleged to have violated such a plan resulting in damage to their land. Those are requirements that plaintiff must prove in order to recover against a developer under the Act. *Bahor v. City of Pittsburgh,* 158 Pa. Commw. 150, 631 A.2d 731 (1993). Rather than granting a demurrer, we will allow plaintiffs to amend their complaint to provide such specifics if they can.[1]

Defendants maintain that plaintiffs' allegation of a breach of an implied warranty of habitability is not applicable to them because they are the developers from whom plaintiffs purchased the lot; they did not build plaintiffs' house. An implied warranty of habitability is applicable to a builder-vendor, *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972), and to builders

---

1. At section 680.15(a), the Storm Water Management Act declares activity conducted in violation of its provisions or any watershed storm water plan to be a public nuisance. Subsection (b) authorizes suits to restrain, prevent or abate violations to be instituted by various government agencies or any aggrieved person. Subsection (c) provides that, "Any person injured by conduct which violates the provisions of section 13 may in addition to any other remedy provided under this act, recover damages caused by such violation from the landowner or other responsible person." The Commonwealth Attorneys Act, at 71 P.S. §732-504, provides that section 680.15 of the Storm Water Management Act is repealed insofar as it is inconsistent with its provisions. Any issue under the Commonwealth Attorneys Act as to whether plaintiffs have an individual cause of action for an alleged violation of section 13 of the Storm Water Management Act is not presently before us.

generally who contract with the public for the construction of residential homes. *Groff v. Pete Kingsley Building Inc.,* 374 Pa. Super. 377, 543 A.2d 128 (1988). The Superior Court in *Groff* noted that, "We express no opinion on whether an implied warranty of habitability will be extended in other factual contexts." *Id.* at 388 n.2, 543 A.2d at 133 n.2. This court has upheld the verdict of a jury that an implied warranty of habitability was breached by a builder who constructed a house for plaintiff that was subjected to substantial accumulations of surface water that entered the lower level of the house. *Keller v. Mentzer,* (opinion in support of order of June 2, 1992 at 1890 Civil 1988), *affirmed,* 430 Pa. Super. 656 (1993). This court previously held, in a case in which plaintiffs sought recovery for a drainage problem at their house in a residential development, that a builder-vendor as defined in *Elderkin v. Gaster, supra,* does not extend to the seller of a lot who did not construct plaintiffs' home. *Wicks v. Milzoco Builders Inc.,* 29 Cumberland L.J. 147 (1979).[2]

Notwithstanding, plaintiffs maintain that the case of *Amodeo v. Ryan Homes Inc.,* 407 Pa. Super. 448, 595 A.2d 1232 (1991), "is precedent for applying the doctrine of implied warranty of habitability to a developer." In *Amodeo,* plaintiffs sought damages due to defective

---

2. That holding, among others, was on preliminary objections to plaintiff's complaint. Appeals followed to the Superior Court. The Superior Court affirmed in part and reversed in part in *Wicks v. Milzoco Builders Inc.,* 291 Pa. Super. 345, 435 A.2d 1260 (1981). The Supreme Court vacated the order of the Superior Court and remanded to the trial court in *Wicks v. Milzoco Builders,* 503 Pa. 614, 470 A.2d 86 (1983). Neither appellate decision addressed the merits of the trial court's holding that an implied warranty of habitability does not extend to the seller of a lot who did not construct plaintiffs' home.

construction and/or fraud which resulted in acid mine drainage water infiltrating the basement of their house. Ryan Homes, the builder, joined the developer, Pleasant Valley Land Company, as an additional defendant. At a non-jury trial plaintiffs were awarded damages jointly and severally against Ryan Homes and the Pleasant Valley Land Company. On appeal, Ryan Homes raised the following issue, "Is a developer of property that is obligated to deliver lots suitable for construction of homes solely responsible for any damages caused by an unsuitable lot?" *Id.* at 453, 595 A.2d at 1235. Pleasant Valley Land Company framed the issue as, "whether it is the builder who is solely liable for plaintiffs' damages for building on a lot which was unsuitable for construction." *Id.* The Superior Court resolved those issues by stating, "[t]he trial court concluded that the two parties were jointly and severally liable for the full amount of the damages. Because neither party has offered any grounds for error regarding such a ruling, and because we can find no error on the part of the trial court, we will not disturb that part of the trial court's order." *Id.* at 463, 595 A.2d at 1240. The opinion of the trial court reveals that the foundation of the house had been dug into a shale substratum and intersected a flow channel of acid mine seepage.[3] The trial court concluded that Ryan Homes breached an implied warranty of habitability. The court further noted:

"Both [Ryan Homes and Pleasant Valley Land Co.] had actual knowledge and/or constructive notice of the special conditions affecting parts of the area developed. . . .

---

3. Opinion filed in support of order of April 16, 1990 in Allegheny County Civil Division, no. GD 87-15747.

"The undisputed evidence indicates that employees, agents, and officers of both Ryan Homes and Pleasant Valley were at the site of the development almost daily during its complete construction. Both are charged with knowledge and/or notice of the special conditions which now adversely affect [the lot on which plaintiffs' home was constructed]. . . . Yet, Pleasant Valley sat idly by and permitted this lot to be sold to the [plaintiffs] under Ryan Homes' instructions for housing construction. . . .

"Because of the knowledge and for notice of both defendants, they each had a duty to prevent the plaintiffs' loss by disclosure, by proceeding with a different style of homes with a shallow basement, or by abandoning the lot as unsuitable for housing construction."

It is apparent that there was linkage between the developer and builder in *Amodeo* that supported the award, and that the award was not premised on either the trial court or the Superior Court specifically extending an implied warranty of habitability to the developer. In the present case, the residential developers sold a lot to plaintiffs on which plaintiffs did not build a house for 11 years. In *Wicks v. Milzoco Builders Inc., supra,* this court rejected an extension of an implied warranty of habitability to a developer alone because the Supreme Court in enunciating the warranty in *Elderkin v. Gaster,* held it applicable to a "builder-vendor" which it defined as "one who buys land and builds homes upon that land for the purpose of sale to the general public." While the Superior Court in *Groff v. Pete Kingsley Building Inc.,* extended the warranty to builders generally who contract with the public for the construction of residential homes, it is not the province of a trial court to create new law by extending it to a developer. As set forth by Judge Learned Hand in *Spector Motor Service v. Walsh,* 139 F.2d 809, 823

(1944), "Nor is it desirable for a lower court to embrace the . . . opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant." We will grant defendants' demurrer to plaintiffs' cause of action alleging a breach of an implied warranty of habitability.

## ORDER

And now, May 2, 1995, it is ordered:

(1) Plaintiffs shall file an amended complaint within 20 days setting forth their cause of action pursuant to the Storm Water Management Act; otherwise, that cause of action is dismissed.

(2) Defendants' demurrer to the cause of action alleging a breach of an implied warranty of habitability, is granted. That cause of action, is dismissed.